IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Angela Adorno,

    Plaintiff,

vs.

State Farm Mutual Automobile Insurance Company,

    Defendant.

Case No. 1:20-cv-01448
**EQUITABLE RELIEF IS SOUGHT AND DEMAND FOR JURY TRIAL**

## COMPLAINT FOR VIOLATION OF TITLE VII, THE LILLY LEDBETTER FAIR PAY ACT, THE EQUAL PAY ACT, & THE ILLINOIS EQUAL PAY ACT

**COMES NOW** Plaintiff Angela Adorno ("Ms. Adorno" or "Plaintiff"), and for her cause of action against State Farm Mutual Automobile Insurance Company, states as follows:

### PARTIES

1. Angela Adorno resides in Erie, Colorado. She is a former State Farm Mutual Automobile Insurance Company employee.

2. State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant"), is an insurer.

3. State Farm is an employer within the meaning of Title VII because it employs fifteen ("15") or more individuals.

### JURISDICTION & VENUE

4. Ms. Adorno brought this action against State Farm pursuant to Title VII, the Lilly Ledbetter Fair Pay Act, and the Equal Pay Act based on State Farm's discriminatory sex-based

compensation practices. As such, this Court has original jurisdiction over Ms. Adorno's claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

5. This Complaint is also brought pursuant to the Illinois Equal Pay Act. This Court has supplemental jurisdiction over Ms. Adorno's state law claims because the state law claims form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts such that they would be expected to be tried in one proceeding.

6. Venue is proper in this District because the conduct complained of arose in McClean County.

7. On or about February 27, 2020, Ms. Adorno filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") regarding State Farm's discriminatory compensation practice which affected her pay. (A copy of the EEOC Charge is attached as **Ex. A**). The matter was assigned EEOC Charge No. 563-2020-01336.

8. On or about September 30, 2020 the EEOC issued Ms. Adorno her Right to Sue Notice ("RTS"). (A copy of the EEOC RTS is attached as **Ex. B**).

9. Ms. Adorno's Complaint is filed within ninety ("90") days of her receipt of the EEOC RTS.

10. Ms. Adorno has exhausted her administrative remedies against State Farm regarding State Farm's discriminatory compensation practice which affected her pay.

**GENERAL ALLEGATIONS**

11. In 2000, Ms. Adorno began working for State Farm and was quickly promoted to various positions within the company.

12. By June of 2015, Ms. Adorno was a Director in the Strategic Resources department.

13. State Farm utilizes job ranking levels.

14. Pay increases are supposed to be based on performance and are a percentage of the employee's salary which must fall within the salary range for employee's job level. Higher job levels have a higher salary range minimum and maximum.

15. State Farm also offers employees annual bonuses which are based on a percentage of the employee's salary.

16. State Farm offers employees pensions for life. The pensions are based on the employee's highest earnings over a five-year period. Thus, the pensions are inextricably tied to the employee's specific job ranking level.

17. During the time Ms. Adorno worked in Strategic Resources, her job ranking level was an MG5.

18. There were approximately thirteen ("13") other Directors in the Strategic Resources department.

19. Nine of the Strategic Resources Directors were male and five were female.

20. All of the female Strategic Resources Directors had the same MG5 job rank.

21. All of the male Strategic Resources Directors had a higher MG6 job rank.

22. All of the Strategic Resources Directors provided leadership and strategic direction on research, analytics, or internal consulting work for State Farm business partners.

23. All of the Strategic Resources Directors managed a team and provided information to State Farm leaders who in turn, made business decisions.

24. The Strategic Resources Directors were shuffled around and worked in all three areas (research, analytics, and internal consulting) under the same job title.

25. Ms. Adorno had more responsibility than her male counterparts because she managed more people and was responsible for more projects.

26. The documented job level descriptor differentiating an MG6 from an MG5 provides that the Director oversee an area that is highly strategic or has a high degree of organizational impact; manages multiple complex efforts; has knowledge of the enterprise; and leads committees to address complex issues.

27. Ms. Adorno managed the internal consulting team and was responsible for all of the complex projects they engaged in, which included defining strategy and organizational transformations of the company.

28. Ms. Adorno was also responsible for leading, monitoring, and reporting to the Chief Financial Officer and the Vice Presidents about the progress, cost, and financial return of an enterprise robotics process automation program.

29. While Ms. Adorno was not aware of all the extra projects her female counterparts were assigned, she recalled that Chris Mullen, another female Strategic Resources Director, had a significant scope of responsibility compared to her male counterparts.

30. Not all of the male Strategic Resources Directors were expected to assume additional large-scale work.

31. During the time Ms. Adorno was a Strategic Resources Director, she managed between eight and sixteen team members.

32. One of the male Strategic Resources Directors only managed two team members.

33. Most male Strategic Resources Directors managed five or fewer team members.

34. Because Ms. Adorno managed more people, she spent considerably more time each month than her male counterparts completing her various management duties such as evaluating and documenting her team members' monthly performance.

35. Many of the team members Ms. Adorno managed held the same job ranking that she did.

36. In 2016 or 2017, Derek Whittington, Ms. Adorno's manager, increased Ms. Adorno's salary and admitted that, in comparison to other Strategic Resources Directors, she was paid much lower within the MG5 salary range.

37. In 2017, Ms. Adorno asked Mr. Whittington for a promotion to an MG6, which he arbitrarily denied.

38. In 2018, Ms. Adorno became aware of the pay differential after State Farm completed an organizational study of the Strategic Resources department.

39. The study revealed that all of the males were the higher MG6 rank and all of the females were the lower MG5 rank.

40. The salary range maximum differential between a MG6 and a MG5 is approximately $32,000.

41. Despite the fact that State Farm was aware of its discriminatory pay practice, no corrective action was taken to adjust the job levels, which had a disparate impact on the compensation and earning potential of the female Strategic Resources Directors.

42. Instead, State Farm told the female Strategic Resources Directors that there was a "sunset rule" which meant that the MG6 would eventually "expire."

43. After the 2018 study, male Strategic Resources Directors maintained their MG6 ranking, while female Strategic Resources Directors had the lower MG5 rank.

44. In other words, there really was no "sunset rule" with respect to the MG6 ranking because it continued with full force and resulted in higher pay for male Strategic Resources Directors who performed jobs that required the same skill, effort, and responsibility as their female counterparts.

45. In 2018, Ms. Adorno asked Bill McCloskey, her then current manager, for a promotion to the MG6.

46. Although Mr. McCloskey acknowledged that Ms. Adorno was one of the highest performers, he arbitrarily denied the promotion request.

47. In April or May of 2019, the Strategic Resources VP announced his retirement which resulted in a reorganization that moved Consulting to the Finance department.

48. Ms. Adorno asked Mr. McCloskey for a promotion to the MG6.

49. Mr. McCloskey arbitrarily denied the promotion request, despite the fact that Ms. Adorno was a good performer and the job she performed required the same skill, effort, and responsibility as her male counterparts, who were paid more based on their MG6 rank.

50. After Ms. Adorno was denied the 2019 promotion, she complained to Laurette Stiles, the Vice President of Strategic Resources, who suggested that Ms. Adorno get her Master's Degree.

51. Ms. Adorno obtained her Master's Degree in 1999.

52. Ms. Stiles acknowledged the lack of advancement opportunities for females, especially within Finance, and even told Ms. Adorno that she should serve as a role model to other women in Finance so they would think that that upward mobility was possible.

53. On September 6, 2019, Ms. Adorno resigned her position with State Farm because it was clear that female employees were not valued and would never be compensated the same as males for performing jobs that required the same skill, effort, and responsibility.

**COUNT I – VIOLATIONS OF TITLE VII & THE LILLY LEDBETTER FAIR PAY ACT**

54. Ms. Adorno reasserts and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. The acts described above violate Title VII and the Lilly Ledbetter Fair Pay Act.

56. State Farm adopted a discriminatory compensation practice that ranked male Strategic Resources Directors as an MG6 and female Strategic Resources Directors as an MG5.

57. State Farm's discriminatory compensation practice had a disparate impact on the pay and earning potential of the female Strategic Resources Directors. There was a $32,000 maximum yearly pay differential between the MG5 and MG 6 rankings. This affected bonuses and lifetime pension payments.

58. State Farm had no reasonable basis to rank the female Strategic Resources Directors lower than their male counterparts because they performed equal work that required the same skill, effort, and responsibility. In fact, many of the female Strategic Resources Directors had more responsibilities and projects than their male counterparts.

59. State Farm was aware of its discriminatory compensation practice as early as 2016 when Ms. Adorno was given a one-time pay increase and again in 2018 when the study confirmed

7

that all the male Strategic Resources Directors were ranked an MG6 while the females were ranked an MG5. State Farm acted willfully and refused to take corrective action which continued to affect the pay of the female Strategic Resources Directors.

60. Instead of correcting its discriminatory pay practice, State Farm told the female Strategic Resources Directors that there was a "sunset rule" and the MG6 rank would expire; however, the MG6 rank continued for the male Strategic Resources Directors.

61. In 2017, 2018, and 2019, Ms. Adorno asked for a promotion to the MG6 position, but all of her promotion requests were arbitrarily denied. She continued to be paid less and had a lower earning potential due to her salary range than her male counterparts which amounted to a constructive discharge.

62. As a result of State Farm's willful violations of the Lilly Ledbetter Fair Pay Act, Ms. Adorno has been denied equal pay and State Farm's discriminatory compensation practice has also affected Ms. Adorno's annual bonuses and lifetime pension.

**WHEREFORE**, Ms. Adorno prays for judgment against State Farm on Count I of her Complaint, for a finding that State Farm violated Title VII and the Lilly Ledbetter Fair Pay Act because it practiced a discriminatory compensation policy of that affected the pay of Ms. Adorno, based on her sex; for an award of back pay, including lost commissions, bonuses and other benefits; for an award of front pay, including the reduction in the value of her pension; for an award of compensatory and liquidated damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses; for interest; and for such other relief as the Court deems just and proper.

## COUNT II – VIOLATIONS OF THE EQUAL PAY ACT

63. Ms. Adorno reasserts and realleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64. The acts described above violate the Equal Pay Act, 29 U.S.C. § 206(d).

65. State Farm adopted a discriminatory compensation practice that ranked male Strategic Resources Directors as an MG6 and female Strategic Resources Directors as an MG5.

66. State Farm's discriminatory compensation practice affected the pay of the female Strategic Resources Directors because there was a $32,000 yearly pay differential between the two rankings. This also resulted in lower lifetime pension payments because the pension is based off of the highest earnings over a five-year period.

67. State Farm had no reasonable basis to rank the female Strategic Resources Directors lower than their male counterparts because they performed equal work that required the same skill, effort, and responsibility. In fact, many of the female Strategic Resources Directors had more responsibilities and projects than their male counterparts.

68. State Farm was aware of its discriminatory compensation practice as early as 2018 because a study confirmed that all the male Strategic Resources Directors were ranked an MG6 while the females were ranked an MG5. State Farm acted willfully and refused to take corrective action which continued to affect the pay of the female Strategic Resources Directors.

69. Instead of correcting its discriminatory pay practice, State Farm told the female Strategic Resources Directors that there was a "sunset rule" and the MG6 rank would expire; however, the MG6 rank continued for the male Strategic Resources Directors.

70. In 2017, 2018, and 2019, Ms. Adorno asked for a promotion to the MG6 position, but all of her promotion requests were arbitrarily denied and she continued to be paid less than her male counterparts which forced her to secure replacement employment.

71. As a result of State Farm's willful violations of the Lilly Ledbetter Fair Pay Act and the Equal Pay Act, Ms. Adorno has been denied equal pay and State Farm's discriminatory compensation practice has also affected Ms. Adorno's lifetime pension.

**WHEREFORE**, Ms. Adorno prays for judgment against State Farm on Count II of her Complaint, for a finding that State Farm violated the Equal Pay Act because it practiced a discriminatory compensation policy of that affected the pay of Ms. Adorno, based on her sex; for an award of back pay, including lost commissions and other benefits; for an award of front pay, including the reduction in the value of her pension; for an award of compensatory and liquidated damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses; for interest; and for such other relief as the Court deems just and proper.

**COUNT III – VIOLATIONS OF THE ILLINOIS EQUAL PAY ACT**

72. Ms. Adorno reasserts and realleges the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73. The acts described above violate the Illinois Equal Pay Act.

74. State Farm is an employer under the Illinois Equal Pay Act, 820 ILCS 112/5, because it has four of more employees.

75. Ms. Adorno was, at all times material to this Count, an employee of State Farm under, 820 ILCS 112/5.

76. State Farm discriminated against Ms. Adorno based on her sex by paying her less than it paid to the male Strategic Resources Directors, who performed the same or a substantially similar job requiring equal skill, effort and responsibility under similar working conditions in violation of the Illinois Equal Pay Act.

77. As a direct and proximate result of State Farm's violation of the Illinois Equal Pay Act, Ms. Adorno was harmed.

**WHEREFORE**, Ms. Adorno prays for judgment against State Farm on Count III of her Complaint, for a finding that State Farm violated the Illinois Equal Pay Act because paid Ms. Adorno less than it paid male Strategic Resources Directors who performed the same or a substantially similar job requiring equal skill, effort and responsibility under similar working conditions; for an award of back pay, including lost commissions and other benefits; for an award of front pay, including the reduction in the value of her pension; for an award of compensatory and liquidated damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses; for interest; and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully Submitted,

**SILVERSTEIN WOLF, LLC**

/s / Ferne P. Wolf
Ferne P. Wolf
530 Maryville Center Drive, Suite 460
St. Louis, MO 63141
fw@silversteinwolf.com
314-744-4010
*LEAD COUNSEL*

Michael A. Williams
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-945-7175
(f) 816-945-7118
*Application for Admission pending*

**Attorneys for Plaintiff**